UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Wanda Goodby,

    Plaintiff,

    v.                                          Case No. 1:07cv229

Wells Fargo Bank, N.A.,                   Judge Michael R. Barrett

    Defendant.

## **OPINION & ORDER**

This matter is before the Court upon the parties' Motions for Summary Judgment (Docs. 19, 20); Memoranda in Opposition (Docs. 23, 24); and Replies (Docs. 31, 32).

## **I.  BACKGROUND**

The parties agree that the material facts are not in dispute.

This matter arises out of a mortgage agreement between the parties. In September of 2003, Defendant agreed to provide a home mortgage loan to Plaintiff and her husband for the purchase of property. (Doc. 17, Midge Baker Depo. at 9) On December 30, 2005, Plaintiff and her husband divorced, and Plaintiff moved out of the property the following month. (Doc. 20-2, Wanda Godby Aff. ¶ 3) On March 22, 2005, Plaintiff and her ex-husband filed for Chapter 7 bankruptcy and listed Defendant as a creditor. (Doc. 1, ¶5) Plaintiff filed a "Debtor's Statement of Intention" to surrender the property. (Doc. 20, Ex. E) However, Plaintiff continued to be the titleholder of record until July 27, 2007. (Doc. 19, Ex. A) Neither party has explained why Plaintiff remained on the title.[1]

---

[1]There also has been no explanation as to why Defendant continued to send delinquent account statements to Plaintiff. (Id. at 20-21) Defendant also continued to report the account as open and delinquent to various credit reporting agencies. (Doc. 20, Ex. A) A March 21,

Plaintiff's debt, including the mortgage account, was discharged on July 19, 2005. (Id. ¶6) Defendant received notice that the debt had been discharged. (Baker Depo. at 12-13)

On March 2, 2007, Defendant conducted an account review of titleholders for property in which it had an interest as required by the respective security instruments. (Baker Depo. at 13-14) Because Plaintiff was still the titleholder for the property, she was included in this group. (Id. at 23-24) Defendant maintains that in conducting the account review, it was provided with only the titleholder's FICO score. (Id. at 13) Defendant explains that an account review is classified as a "soft hit," which is an inquiry that can only be viewed by the consumer, and never by any third party, including any creditor or potential creditor. (Id. at 16)

In her Complaint, Plaintiff brings one claim for violation of the Fair Credit Reporting Act ("FCRA"). Plaintiff alleges that Defendant obtained credit information for an impermissible purpose in violation of 15 U.S.C. § 1681b(f) and under false pretenses in violation of 15 U.S.C. § 1681q.

## II. ANALYSIS

### A. Motion for Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of

---

2007 credit report shows a balance on the account, as well as a past due amount. (Id.)

showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

### B. Fair Credit Reporting Act

The parties do not dispute that the FCRA is applicable. Defendant admits that it is a "user" of credit information as that term is defined in the Act. Plaintiff brings claims under two sections of the FCRA: (1) obtaining a consumer report by use of false pretenses, § 1681q; and (2) obtaining a consumer report for an impermissible purpose, § 1681b(f).[2]

Plaintiff cites to this Court's decision in *Thibodeaux v. Rupers* for the proposition that courts read these two sections together to find that the FCRA imposes civil liability upon any person who willfully obtained information from a credit reporting agency under false pretenses. 196 F.Supp.2d 585, 590 (S.D.Ohio 2001), *citing Kennedy v. Border City S & L Ass'n*, 747 F.2d 367, 368 (6th Cir. 1984). However, as this Court acknowledged in *Thibodeaux*, Congress amended the FCRA in 1996, and in essence codified the pre-amendment case law reading these sections together. *Id.* Therefore, reliance on §

---

[2] 15 U.S.C. § 1681q provides: "Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under Title 18, imprisoned for not more than 2 years, or both."

1681q, a criminal liability statute, is unnecessary, as the civil liability provisions now cover the act of obtaining a consumer report without a permissible purpose. *See Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002).[3]

15 U.S.C. §1681b(f) provides:

A person shall not use or obtain a consumer report for any purpose unless--

(1)  the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2)  the purpose is certified in accordance with section with section 1681e of this title by a prospective user of the report through a general or specific certification.

At 15 U.S.C. § 1681b(a)(3), the FCRA provides a list of permissible purposes:[4]

---

[3]As the Court in *Phillips v. Grendahl* explained:

After the Fair Credit Reporting Act was enacted in 1970, courts noticed what appeared to be a loophole. The original sections 1681n and 1681o only created civil liability for failure to comply with the Act. The original section 1681b, which generally stated the circumstances under which consumer reporting agencies could provide reports, did not impose a duty on users of reports to refrain from requesting reports without a proper purpose.

. . .

Courts avoided this loophole by reasoning that since section 1681q created criminal liability for requesting "information on a consumer" using false pretenses, this prohibition was a "requirement" of the Act, and therefore provided the substantive basis for civil liability. *See Hansen v. Morgan*, 582 F.2d 1214, 1219 (9th Cir.1978); *Kennedy v. Border City S & L Ass'n*, 747 F.2d 367, 369 (6th Cir.1984); *Zamora v. Valley Fed. S & L Ass'n*, 811 F.2d 1368, 1370 (10th Cir.1987); *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 971-72 (4th Cir.1987); *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 47 (2d Cir.1997). "False pretenses" was interpreted to mean failure to disclose the lack of a permissible purpose. *See Northrop*, 134 F.3d at 46 n. 6.

312 F.3d at 364.

[4]Although § 1681b(a)(3) regulates those who furnish consumer reports, the parties do not dispute that consumer reports are subject to its requirements. Numerous other courts have recognized the same. *See Smith v. Bob Smith Chevrolet, Inc.*, 275 F.Supp.2d 808, 815, n.2

  (a) In general.  Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

 . . .

   (3) To a person which it has reason to believe–

    (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

    . . .

    (F) otherwise has a legitimate business need for the information--

     (i) in connection with a business transaction that is initiated by the consumer; or

     (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

Based on this statutory language, courts have found that a plaintiff must establish three elements in order to sustain a claim of improper use or acquisition of a credit report: (i) that there was a "consumer report" within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose.  *McFarland v. Bob Saks Toyota, Inc.*, 466 F.Supp.2d 855, 867 (E.D.Mich. 2006), *citing Phillips v. Grendahl*, 312 F.3d at 364; *Gillom v. Ralph Thayer Automotive Livonia, Inc.*, 444 F.Supp.2d 763, 771 (E.D.Mich. 2006).  In addition, the plaintiff must demonstrate that the defendant acted with the requisite degree of culpability--either negligence, 15 U.S.C. § 1681o(a), or willfulness, 15 U.S.C. § 1681n(a)--in

---

(W.D.Ky. 2003) and cases cited therein.

order to impose civil liability under the FCRA.  *Id.* (citations omitted)*.*

The parties only dispute whether Defendant's account review was a permissible purpose and whether Plaintiff has demonstrated that Defendant acted with the requisite degree of culpability.

### 1. Permissible purpose

The parties argue that 15 U.S.C. § 1681b(a)(3)(A) and § 1681b(a)(3)(F) are the relevant provisions in determining whether Defendant accessed Plaintiff's credit information for a permissible purpose.

The Court finds that there is no evidence that as of the date of the account review, Defendant intended to use Plaintiff's information in connection with a credit transaction involving Plaintiff.  There were no credit transactions contemplated between the parties, nor was there an account upon which to collect.  Therefore, Defendant did not have a permissible purpose under section 1681b(a)(3)(A).

Defendant cites to *Levine v. World Fin. Network Nat'l. Bank*, 437 F.3d 1118 (11th Cir. 2006), for the proposition that FCRA allows a consumer reporting agency to sell an "account review" to a creditor to allow the creditor to "review an account to determine whether the consumer continues to meet the terms of the account."  Defendant argues that it follows that a creditor is permitted to purchase a report for the purpose of reviewing a customer's credit score.

In *Levine*, the Eleventh Circuit noted that the FCRA does not explicitly state whether an account review under section 1681b(a)(3)(F) includes the review of accounts that have been paid in full and closed.  437 F.3d at 1121.  The court explained:

The statute contains overlapping language in two provisions: Section

> 1681b(a)(3)(A) permits the sale of a credit report to a creditor who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is furnished and involving the extension of credit to, or review or collection of an account of, the consumer." Section 1681b(a)(3)(F)(ii) permits the sale of a credit report to a creditor in order to "review an account to determine whether the consumer continues to meet the terms of the account."

*Id.* at 1121-22.  The court noted that "[t]here is a difference in opinion on whether the ambiguous language in FCRA contains an absolute prohibition against the sale of credit reports to former creditors whose accounts are closed and paid in full.  *Id.* at 1122, *citing Wilting v. Progressive County Mut. Ins. Co.*, 227 F.3d 474, 476 (5th Cir. 2000) (per curiam) ("[N]either [FCRA] nor the FTC's commentary on [FCRA] suggests that a report may only be permissibly obtained during particular points in the parties' relationship."); Letter from Clarke W. Brinckerhoff, Federal Trade Commission, to Kenneth J. Benner, American Council on Consumer Awareness (Aug. 30, 1999) ("Once an account is closed because the consumer has paid the debt in full . . . it is our view that no permissible purpose exists for a [consumer reporting agency] to provide file information . . . to the creditor.  Because there no longer exists any account to 'review' and the consumer is not applying for credit, the FCRA provides no permissible purpose for the creditor to receive a consumer report from [the agency]."). However, the *Levine* court found it was not necessary to resolve the issue to rule on the motion to dismiss before it.  *Id.*  ("In the absence of discovery and a more fully developed record, we reserve judgment on whether there is an absolute prohibition against such requests by former creditors for accounts that are closed and paid in full.")

The Sixth Circuit has had occasion to interpret the language in 1681b(a)(3)(A) (permitting the sale of a credit report to a creditor who "intends to use the information in

connection with a credit transaction involving the consumer on whom the information is furnished and involving the extension of credit to, or review or collection of an account of, the consumer") in conjunction with section1681b(a)(3)(F)(ii) (permitting the sale of a credit report to a creditor in order to "review an account to determine whether the consumer continues to meet the terms of the account").

In *Duncan v. Handmaker*, 149 F.3d 424 (6th Cir. 1998), the defendants relied on section 1681b(3)(E), which was the predecessor to the current 1681b(a)(3)(F).[5] The defendants, who were attorneys representing a lender, argued that they had a legitimate business need for consumer reports on the plaintiffs to prepare for litigation the plaintiffs had initiated. The defendants argued the need for the information was connected to the underlying business transaction–the extension of the mortgage loan--between their client and the plaintiffs. The Sixth Circuit concluded that based on the facts of the case, it was unable to deem preparation for a negligence suit "a legitimate business need . . . in connection with a business transaction." The court explained:

> Unfortunately for [the defendants], we must reject their effort to shoehorn the use of the [the plaintiffs'] consumer reports into § 1681b(3)(E). Basic principles of statutory construction prevent us from interpreting § 1681b(3)(E) in a fashion that allows a party to obtain a consumer report for a purpose only tangentially related to the extension of credit. The rule of *ejusdem generis* suggests that when general words-such as those that appear in § 1681b(3)(E)-follow specific terms, the general words should be construed "to embrace only objects similar in nature to those objects enumerated by the preceding specific words." Section 1681b(3)(A) of the FCRA focuses on the extension of credit and the collection of debt. It permits a party to obtain a consumer report "in connection with a credit transaction . . . involving the

---

[5]As part of the 1996 Amendment of the FCRA, section 1681b(E), the "business need" exception, was re-labeled § 1681b(a)(3)(F). The previous version read: "(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer."

> extension of credit to, or review or collection of an account of, the consumer."
> If we were to interpret § 1681b(3)(E) too broadly, we would render the specificity of § 1681b(3)(A) meaningless. We also would inadvertently transform § 1681b(3)(E) into a provision that enabled information-seekers to circumvent the restrictions of the FCRA.

*Id.* at 427 (citations omitted).  *Cf. Spence v. TRW, Inc.*, 92 F.3d 380 (6th Cir. 1996) (finding that consumer's filing of lawsuit against creditor, alleging false reporting of past-due debt to credit reporting agency, gave credit agency reason to believe that creditor had legitimate business need for copy of consumer's residential mortgage credit report in connection with preparation of its defense).

Similarly, in *Smith v. Bob Smith Chevrolet, Inc.* the court found that the defendant, an automobile dealership, did not have a legitimate business need to access consumer's credit report.  275 F.Supp.2d 808 (W.D. Ky. 2003).  The plaintiff applied for financing for a new vehicle and the parties entered into an agreement for its purchase.  *Id.* at 812.  The purchase price reflected the plaintiff's employee discount and the trade in of the plaintiff's used vehicle.  *Id.*  After the transaction was complete, it was discovered that the defendant had inadvertently doubled the amount of the discount.  *Id.*  The defendant then accessed the plaintiff's credit information to determine whether he was continuing to make payments on his trade-in vehicle and paying for the insurance on the trade-in.  *Id.* at 812-13.

The defendant maintained that because the transaction was in dispute, it needed to ascertain the value of its collateral.  *Id.* at 816.  The defendant argued it had a legitimate business need for the information in connection with a business transaction that was initiated by the consumer.  *Id.*  The court acknowledged that in the abstract, it was true that the defendant accessed the plaintiff's credit report in connection with a transaction that the plaintiff at one point initiated.  *Id.*  However, the court concluded that the FCRA uses the

terms "in connection with a transaction initiated by the consumer" more restrictively. *Id.*

The court noted that under the Act, the definition of the term "consumer report" suggested that Congress primarily envisioned consumer reports being disseminated for the purposes of assessing "eligibility."[6] The court then turned to the other specific permissible purposes listed in 1681b(a)(3). *Id.* The court explained that "[t]he rule of *ejusdem generis* provides that when general words follow an enumeration of specific terms, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *Id.*, citing *Washington State Department of Social and Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371 (2003). The court concluded:

> The definition of "consumer report" therefore includes those reports needed to assess a consumer's eligibility for a benefit, as well as other predictable needs–such as collecting money owed under an agreement and assessing a particular consumer's credit or insurance risk–that arise in the midst of a typical business transaction. In fact, in every one of these situations, the consumer report is obtained either to provide a benefit to a consumer or to

---

[6]Under the FCRA:

The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 604 [15 USCS § 1681b].

15 U.S.C. § 1681a(d).

collect a pre-existing debt.

*Id.* at 817. The court found that the two permissible purposes stated in § 1681b(a)(3)(F), when read together bolstered this interpretation:

> That is, § 1681b(a)(3)(F)(i) suggests the retention of a credit report for the purpose of furthering a business transaction initiated by a consumer and § 1681b(a)(3)(F)(ii) permits the use of a credit report to determine whether a consumer continues to be eligible for a benefit. It is a basic principle of statutory construction that a statute should be read and construed as a whole. Like the definition of "consumer report" and consistent with the other five specific permissible purposes, these two permissible purposes also suggest that Congress intended to allow access to a consumer report either when that access would benefit a consumer or would facilitate the collection of pre-existing debt.

*Id.* (citation omitted).

Applying this interpretation to the facts before it, the court explained that the defendant's reason for accessing the credit report was not in connection with a standard business transaction that the plaintiff initiated. *Id.* Instead, the court found that the defendant accessed the plaintiff's credit report to determine how much additional money it could collect, apart from what the two parties agreed upon in a standard business transaction. *Id.*

> Almost certainly, [the defendant] did not access [the plaintiff's] credit report for a reason beneficial to the consumer. Nor did [the defendant] access the credit report to collect on a pre-existing debt. Rather, [the defendant] accessed the report for its own business purposes and as part of a new event: the recovery of the duplicative discount.

*Id.* Accordingly, the court rejected the defendant's interpretation of the phrase "in connection with" as being limitless. *Id.* The court explained:

> Under [the defendant's] reading, so long as any company had a reason to question any part of a transaction, it could access a consumer's credit report "in connection with a business transaction" that at some point was "initiated by the consumer." That is, five weeks, five months, or five years down the

> line, [the defendant] could access [the plaintiff's] credit report if some dispute ever arose about the contracted price.

*Id.* The court explained that neither the specific language nor the overall scope of the FCRA supported "such an interpretation would give commercial entities an unlimited blank check to access and *reaccess* a consumer credit report long after the typical issues of eligibility, price, and financing were determined." *Id.* (emphasis in original). The court went on to analyze the Federal Trade Commission's interpretation of the FCRA, which the court found to confirm the court's view. *Id.* at 817-18.[7] Therefore, the court concluded that when the defendant accessed the plaintiff's credit report it was not, as a practical matter, part of the transaction which plaintiff initiated. *Id.* at 819. The court explained that transaction, in so far as the plaintiff's eligibility and debt was concerned, ended when the parties created a contract for the car's price and the plaintiff paid that price in full. *Id.* Accordingly, the court found that the defendant did not have a "legitimate business need" for the plaintiff's credit report "in connection with a transaction initiated by the consumer." *Id.*

The Court has cited extensively to the opinion in *Smith v. Bob Smith Chevrolet*, because it finds its analysis and resultant narrow approach in interpreting "legitimate

---

[7]The court explained that the FTC is the agency empowered to enforce the FCRA. 275 F.Supp.2d at 817, *citing* 15 U.S.C. § 1681s(a). The court explained that in its commentary on the "legitimate business need," permissible purpose, the FTC stated:

> Under this subsection, a party has a permissible purpose to obtain a consumer report on a consumer for use in connection with some action the consumer takes from which he or she might expect *818 to receive a benefit that is not more specifically covered by subsections (A), (B), or (C). For example, a consumer report may be obtained on a consumer who applies to rent an apartment, offers to pay for goods with a check, applies for a checking account or similar service, seeks to be included in a computer dating service, or who has sought and received overpayments of government benefits that he has refused to return.

16 CFR Ch. 1, Pt. 600 App.

business need" to be correct. Furthermore, the court's approach is in keeping with the Sixth Circuit's narrow approach of interpretation in *Duncan v. Handmaker*, 149 F.3d 424 (6th Cir. 1998), discussed above.

Defendant argues that it had a legitimate business need for the account review because Plaintiff remained the titleholder of the property in which it had a security interest. Defendant argues further that it needed to assess its risk of loss and protect its investments. (See Baker Depo. at 24)[8] Defendant maintains that such an account review is required by the security instruments related to property interests. (See Baker Depo. at 13-14)

The Court finds that Defendant did not have a "legitimate business need" for Plaintiff's credit information. The account review could not be "in connection with a transaction initiated by the consumer" because the only transaction between the parties initiated by Plaintiff was the mortgage loan which had been discharged in the bankruptcy proceedings. The account review was for a purpose only tangentially related to the extension of credit. There is nothing in the record indicating that the account review was obtained to either provide a benefit to Plaintiff or to collect a pre-existing debt. Notwithstanding Plaintiff's name on the title to the property, as a practical matter, the parties did not have an existing relationship. Plaintiff had surrendered her rights to the property. In addition, Defendant would have been unable to collect any debt since it had been discharged in the bankruptcy proceedings. Therefore, Defendant did not have a

---

[8]Defendant's witness pursuant to Federal Rule of Civil Procedure 30(b) explained that when "we still have a title holder on a property, that it is our duty to protect the investor and/or the insured of the lien that is still held on that property." (Baker Depo. at 26)

permissible purpose under section 1681b(a)(3)(F).

### 2. Culpability

If a violation of the FCRA is negligent, the plaintiff is entitled to actual damages under section 1681o(a).[9]  If a violation is willful, the plaintiff may have actual damages, statutory damages ranging from $100 to $1,000, and punitive damages under section 1681n(a).[10]

---

[9]This provision provides in relevant part:

(a)     In general

Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--

(1)     any actual damages sustained by the consumer as a result of the failure; and

(2)     in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

[10]This provision provides in relevant part:

(a)     In general

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--

(1)(A)     any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B)     in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2)     such amount of punitive damages as the court may allow; and

Defendant does not argue that Plaintiff cannot show that it acted negligently. However, Defendant does argue that Plaintiff cannot show that it willfully violated the FCRA because it acted with a legitimate business purpose in accessing Plaintiff's credit information on a single occasion, and had no impermissible purpose for doing so.

In *Safeco Ins. Co. of America v. Burr*, the Supreme Court analyzed whether the phrase "willfully fails to comply" in section 1681n(a) reaches reckless FCRA violations. 127 S.Ct. 2201 (2007). The Court concluded that where willfulness is a statutory condition of liability, the word covers not only knowing violations of the statute, but also reckless ones. *Id*. at 2208. The Court explained that "[w]hile 'the term recklessness is not self-defining,' the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 2215, *quoting Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The Court concluded that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was

---

       (3)     in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

(b)    Civil liability for knowing noncompliance

    Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater.

merely careless." *Id*. The Court found that even though one of the two defendants had violated the statute, the violation was not reckless because it was based on a reasonable reading of the FCRA, and because there was no authoritative guidance from either the courts of appeal or the Federal Trade Commission on how the statute should be interpreted. *Id.* at 2216.

This Court has held that whether conduct is willful under the FCRA is generally a question of fact for which summary judgment is not appropriate. *Watson v. Citi Corp*., 2008 WL 4186317, 10 (S.D.Ohio 2008), *citing Holmes v. Telecheck Int'l, Inc*., 556 F.Supp.2d 819, 847 (M.D.Tenn. 2008); *Thibodeaux v. Rupers*, 196 F.Supp.2d 585, 592, *citing Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1447 (6th Cir. 1993). However, given the Supreme Court's direction in *Safefco* and the parties' agreement that there are no material facts in dispute, the Court feels compelled to decide as a matter of law whether Defendant's actions are a willful violation of the FCRA.

The Court cannot conclude that Defendant acted in reckless disregard of whether it was complying with the Act. While conducting an account review of Plaintiff's credit information is a violation under a reasonable reading of the FCRA's terms, there is nothing in the record which shows that Defendant ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. As Plaintiff admits, there is no reported case that has decided whether under 15 U.S.C. § 1681(a)(3) a user of credit information can access a consumer's credit information concerning an account which has been discharged in bankruptcy. In addition, in *Levine*, the Eleventh Circuit noted that "[t]here is a difference in opinion on whether the ambiguous language in FCRA contains an absolute prohibition against the sale of credit reports to former creditors

whose accounts are closed and paid in full." 437 F.3d at 1122. Therefore, Defendant did not have "the benefit of guidance from the courts of appeals." Defendant also did not have authoritative guidance from the FTC on the issue. Accordingly, the Court finds that Plaintiff has not shown a willful violation under 15 U.S.C § 1681n(a).

### D. Damages

Defendant argues that Plaintiff cannot establish that she suffered any damages, and therefore it is entitled to summary judgment. Plaintiff's Motion does not reach the issue of damages, but only addresses liability.

As explained above, any person who is found negligent in failing to comply with any FCRA requirement is liable to the consumer for actual damages sustained as a result of the failure. 15 U.S.C. § 1681*o*. In her Complaint, Plaintiff claims damages for mental anguish, embarrassment, frustration, humiliation, and emotional distress. As this Court has explained:

> While "actual damages" may include emotional distress, because emotional distress damages are so easy to manufacture, courts have imposed a strict standard to be applied for them to be recoverable. Accordingly, generalized claims of emotional injury are not enough to establish damages. When the plaintiff's testimony is the only proof of emotional damages, he or she must explain the circumstances of the injury in reasonable detail and cannot simply rely on conclusory statements.

*Garrett v. Trans Union, L.L.C.*, 2006 WL 2850499, *11 (S.D.Ohio Sept. 29, 2006) (unpublished) (citations omitted). In addition, a plaintiff must show a causal relationship between the violation of the statute and the loss of credit, or some other harm. *Id.* (citations omitted).

Because Defendant has moved for summary judgment on this point, it is Defendant's burden to demonstrate that there is no genuine issue of material fact. *See*

*Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (explaining that the moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial"), *quoting Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987). Defendant has not carried that burden here. Therefore, Defendant's Motion for Summary Judgment is DENIED as to the issue of damages.

### III. CONCLUSION

Based on the foregoing, the parties Motions for Summary Judgment (Docs. 19, 20) are **DENIED in PART** and **GRANTED in PART**. The sole remaining issue for determination is the calculation of actual damages under 15 U.S.C. § 1681*o* that Plaintiff sustained as a result of Defendant's negligent violation of 15 U.S.C. § 1681b(a)(3)(F).

**IT IS SO ORDERED.**

                                          */s/ Michael R. Barrett*
                                          Michael R. Barrett, Judge
                                          United States District Court